UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ORENTAL J. ALLEN,

        Petitioner,

vs.                              Case No.  2:07-cv-107-FtM-29SPC
                                          Case No.  2:04-cr-25-FtM-29SPC

UNITED STATES OF AMERICA,

        Respondent.
_____

**OPINION AND ORDER**

     This matter comes before the Court on petitioner Orental J. Allen's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Doc. #1; Cr. Doc. #53)[1] and Memorandum of Facts and Law (Doc. #2), both filed on February 22, 2007.  The United States filed its Response in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 on April 5, 2007 (Doc. #7). Petitioner thereafter filed a Reply (Doc. #9) on May 16, 2007.  For the reasons set forth below, the motion is denied.

**I.**

    On March 31, 2004, a federal grand jury in Fort Myers, Florida returned an Indictment (Cr. Doc. #1) charging petitioner Orental J.

---

[1]The Court will make references to the dockets in the instant action and in the related criminal case throughout this opinion. The Court will refer to the docket of civil habeas case as "Doc.", and will refer to the underlying criminal case as "Cr. Doc."

Allen (petitioner or Allen) with two counts of distribution of five grams or more of cocaine base, crack cocaine, and one count of distribution of an unspecified amount of cocaine base, crack cocaine. Pursuant to a Plea Agreement (Cr. Doc. #21) petitioner pled guilty to all three counts. On September 23, 2004, the Court sentenced petitioner to concurrent 188 month terms of imprisonment on each count, to be followed by 48 months supervised release. (Cr. Doc. #34.) Judgment (Cr. Doc. #35) was filed on September 24, 2004.

Petitioner through counsel filed a Notice of Appeal (Cr. Doc. #36) on September 28, 2004. On October 26, 2005, the Eleventh Circuit Court of Appeals granted the government's motion to dismiss the appeal (Cr. Doc. #51) based on petitioner's knowing and voluntary waiver of the right to appeal his sentence contained in the Plea Agreement. Petitioner's petition for a writ of certiorari was denied by the Supreme Court on February 21, 2006. Allen v. United States, 546 U.S. 1207 (2006).

## II.

The United States asserts that petitioner's § 2255 motion is untimely and should therefore be dismissed. The government's belief that petitioner did not file a petition for a writ of certiorari is incorrect. As noted above, the petition was denied on February 21, 2006. The § 2255 motion is deemed filed on February 19, 2007, pursuant to the "mailbox rule" when petitioner placed it in the prison mailing system. Houston v. Lack, 487 U.S.

266 (1988); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001). Since the petition was filed within one year of the denial of certiorari, it is timely. Clay v. United States, 537 U.S. 522, 527 (20030; Drury v. United States, 507 F.3d 1295 (11th Cir. 2007). Therefore, the United States' request to dismiss the petition will be denied.

### III.

Petitioner asserts that the court erred in accepting his guilty plea and Plea Agreement because he suffers from a mental disability and memory loss from extreme drug usage which affected his ability to make a sound decision based on past information. Petitioner asserts that this caused him to sign a non-beneficial Plea Agreement, waive vital constitutional rights, and admit conduct that he did not necessarily remember. Petitioner also asserts that the guilty plea colloquy placed the magistrate judge on notice of this memory loss, which should have triggered a competency hearing as required by Pate v. Robinson, 383 U.S. 375 (1966). (Cv. Docs. ## 2, pp. 1-4; 9, pp. 1-2.)

### A.

Read liberally, petitioner raises issues related to both his competency and the knowing and voluntary nature of his guilty plea. The general legal principles are well settled as to each area.

**(1)**

The Due Process Clause of the Fifth Amendment prohibits the government from trying or sentencing a defendant who is legally incompetent. Pate v. Robinson, 383 U.S. 375, 378 (1966); Cooper v. Oklahoma, 517 U.S. 348, 354 (1996); United States v. Rahim, 431 F.3d 753, 759 (11th Cir. 2005), cert. denied, 126 S. Ct. 1820 (2006). Competency issues can involve both substantive competency claims and procedural competency claims. Battle v. United States, 419 F.3d 1292, 1298 (11th Cir. 2005). Petitioner seems to raise both types of competency claim in his petition.

To the extent petitioner claims he was incompetent to plead guilty or be sentenced, he raises a substantive competency claim. Battle, 419 F.3d at 1298. To be competent to stand trial or plead guilty, a defendant must have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and have a rational as well as factual understanding of the proceedings against him. Dusky v. United States, 362 U.S. 402, 402 (1960); Godinez v. Moran, 509 U.S. 389, 396 (1993); Rahim, 431 F.3d at 759. Petitioner bears the burden of proving by a preponderance of the evidence that he was incompetent to stand trial or plead guilty. Battle, 419 F.3d at 1298. To show entitlement to a hearing on a substantive incompetency claim, petitioner must show clear and convincing evidence creating a real, substantial and legitimate doubt about his competence to plead guilty. Battle, 419 F.3d at 1298-99. This standard of proof is high, and the facts

must positively, unequivocally, and clearly generate the legitimate doubt. Battle, 419 F.3d at 1299. A substantive competency claim cannot be waived. Battle, 419 F.3d at 1298. Additionally, a defendant who is not competent to participate in the proceedings cannot waive his constitutional rights. Godinez, 509 U.S. at 400-401.

As a procedural matter, a court has a due process obligation to conduct a competency hearing, even if not requested to do so, if there is reasonable cause to believe a defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Pate, 383 U.S. at 385; 18 U.S.C. § 4241. In order to trigger the trial court's obligation to order a competency evaluation and hearing, the court must have had information raising a "bona fide doubt" as to the defendant's competency. Rahim, 431 F.3d at 759. Relevant information as to whether the court should have conducted a competency hearing includes evidence of defendant's irrational behavior, defendant's demeanor at trial or in hearings, and prior medical opinion regarding defendant's competence. Tiller v. Esposito, 911 F.2d 575, 576 (11th Cir. 1990). If this procedural competency claim is not raised on direct appeal, it is waived. Battle, 419 F.3d at 1298.

**(2)**

The United States Constitution requires that a guilty plea must be voluntary and defendant must make the related waivers knowingly, intelligently and with sufficient awareness of the relevant circumstances and likely consequences. United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n. 13 (1976). To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. United States v. Brown, No. 05-16128, ___ F.3d ___, 2008 WL 1869727 (11th Cir. April 29, 2008); United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005); United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999).

**B.**

At the change of plea hearing the magistrate judge personally addressed petitioner in open court. (Doc. #48, p. 2.) Petitioner was advised that the Court was required to find that his guilty plea was made freely and voluntarily and that there was a factual basis to support the guilty plea, and therefore he would be placed under oath and asked questions. (Id. at 2.) Petitioner was told that if he did not understand anything the Court said he should have the Court further explain; he was also advised that he could confer privately with his attorney at any time during the plea. (Id. at 2.) Petitioner was then placed under oath, and was advised of his obligation to tell the truth and that false statements could

be prosecuted for perjury. (Id. at 3.) Petitioner said he understood. (Id.) Petitioner was also told that his testimony during the plea colloquy could be used against him in future proceedings. (Id. at 3.)

Petitioner stated he was expelled in the eleventh grade, but could read, write and understand English. (Id. at 3-4.) Petitioner stated that he had not been recently treated for any type of mental illness or addition to narcotic drugs, but had gone through a drug program during a prior incarceration in about 1997. (Id. at 4.) Petitioner stated he was not currently under the influence of any drugs, medication or alcohol. (Id.) When asked if he suffered from any type of mental or emotional disability, petitioner stated "memory loss, from what I know." (Id.) Petitioner stated that his memory loss was from hard drug use, but that he clearly understood where he was, what he was doing, and the purpose of the proceeding. (Id. at 4-5.)

Petitioner stated that he had received a copy of the Indictment, had read through it and had discussed it with his attorney. (Id. at 5.) Petitioner stated that his attorney had done everything petitioner asked her to do in regard to the case, and that he was satisfied with her services. (Id.)

When the magistrate judge referred to the Plea Agreement, petitioner stated "I have no idea what I'm pleading out to today, if that's helps the question." (Id.) Petitioner then interrupted the magistrate judge, stating "I know I'm pleading to three counts.

What I was saying, I don't know what time or what plea agreement am I signing to. You understand what I am trying to say?" (Id. at 6.) The magistrate judge told petitioner to continue, and petitioner's counsel responded that petitioner was very familiar with the state criminal justice system in which a defendant knows what the sentence would be, but understood that in the federal system he would not know the specific length of the sentence. (Id. at 6-7.) Counsel also stated that petitioner would be cooperating with the government in hopes of reducing the sentence. (Id. at 6-7.) When the magistrate judge asked if that was "pretty much what you were trying to tell the Court?" petitioner responded "Yes, ma'am." (Id. at 7.) The magistrate judge reiterated the difference between the state and federal systems as far as knowing what the sentence would be, and then asked if petitioner knew what his plea agreement said. Petitioner responded "yes." (Id.) The magistrate judge then said "That's what you are telling me, you do understand the plea agreement but you're not sure of what the sentence is, is that right?" and petitioner said "yes, ma'am." (Id.)

The magistrate judge asked if there was any question as to petitioner's competency to enter a plea of guilty, and both government counsel and defense counsel responded that there was not. (Id. at 8.) Defense counsel expanded that petitioner was just very nervous about it. (Id.) Both defense counsel and the magistrate judge pointed out the Assistant United States Attorney

-8-

who would be working with the agents as to any cooperation provided by petitioner. (Id. at 8-9.)

The magistrate judge then showed petitioner a copy of the Plea Agreement, and petitioner stated that he had initialed every page and had signed it and discussed it with his attorney. (Id. at 9.) When asked if he understood the Plea Agreement, petitioner said "somewhat, yes." (Id.) The magistrate judge asked if that meant petitioner understood the Plea Agreement as far as what counts he was pleading to and the elements, and petitioner said yes, that he understood the case. (Id.) Petitioner said what he did not understand was where he fell with regard to sentencing, that he knew he could fall between five and forty years, and it scared him to know he was signing and could get forty years. (Id. at 10.) The magistrate judge explained that these were the minimum and maximum penalties, but the Sentencing Guidelines would govern petitioner's actual sentence, which petitioner said he understood. (Id.) The magistrate judge and government counsel explained the possibility of substantial assistance, which petitioner said he understood. (Id. at 11-12.)

The magistrate judge summarized the charges and the maximum penalties to petitioner. (Id. at 12-13.) Petitioner stated that he understood those were the charges to which he was pleading guilty. (Id. at 13.) When the magistrate judge pointed out that the third count did not contain a specified quantity, and therefore had a different minimum and maximum sentence, petitioner said he

understood that but did not understand why the government did not list the quantity since the amount was weighed according to his discovery paperwork. (Id. at 14.) The magistrate judge explained that that was the way the grand jury charged the offenses, and that the lack of a specified amount was to petitioner's benefit with regard to the maximum possible sentences. (Id. at 14-15.)

After continuing with the guilty plea colloquy, the magistrate judge returned to the Plea Agreement, asking if the facts set forth at pages 11 through 14 of the Plea Agreement were correct. Petitioner said "yes, I believe so," and that he did not object to any of the facts. (Id. at 25.) The magistrate judge asked petitioner to state in his own words what he did that made him guilty, and petitioner stated: "Well, your honor, like I stated earlier, I have a memory loss, but I was in fact a drug dealer, so . . ." (Id. at 26.) The magistrate judge then specifically asked if petitioner distributed five or more grams of crack cocaine on April 30, 2003, to which petitioner said "Yes, your Honor. I'm quite sure I did. In some ways I can almost remember this day, but –" (Id.) The magistrate judge asked petitioner to tell her what he did when he was dealing drugs in April, and petitioner stated: "Well, I would buy ounces of cocaine and take it back to my house and make it hard, cut it up, ready for distribution for anybody that is ready to purchase." (Id.) Petitioner said that people would come to his house and purchase the crack cocaine. (Id. at 26-27.) Defense counsel advised that petitioner did not remember

the confidential informant exactly, but that he was in the business and was under the influence of drugs as well, but admitted the actual transactions. (Id. at 27.) Petitioner told the magistrate judge he was doing the same thing on May 6, 2003, and that there was no doubt that he was distributing five grams or more of crack cocaine on both April 30 and May 6, 2003. (Id.) Petitioner said he was also dealing crack on August 26, 2003, and would typically place it in a sandwich bag or a ziplock bag. (Id. at 27-28.) Petitioner said he could supply amounts for $400-$500. (Id. at 28.) The Assistant U.S. Attorney pointed out that recordings of the transactions with the informant had been provided during discovery, and defense counsel stated that petitioner recognized his own voice on the recordings, that it was petitioner in those dealings, but that petitioner did not recognize the confidential informant. (Id. at 29.) Petitioner confirmed that he recognized his voice on the recordings, and the recordings appeared to be accurate representations of the dealings he did with people. (Id. at 29.) Petitioner said there was no doubt in his mind that the events took place on or about the dates charged. (Id. at 30.)

The magistrate judge then gave petitioner the opportunity to tell her anything else about the case or the facts, to which petitioner said:

> Well, I just want to ask the Court to accept by apology and my plea of guilty for being a drug dealer. And I believe no matter how much time I get out of this, I believe that just, just this incident alone has been enough to shake me up, you know, change my life around

already.  And one of the reasons why I know I have to change my life around is cause all three counts I'm charged with ounce of crack cocaine. That's pretty heavy stuff. But in addition to making me think that I've been a changed man, I have told detectives and my attorney about a Brinks robbery case, couple murders, you know, and I'm hoping that that could, you know, show some kind of . . . cooperation, yes. (Id. at 30-31.)

Petitioner said that having heard the court's explanation of the guilty plea and its effects on his rights, he still desired to plead guilty to the three counts of the Indictment. (Id. at 31.) Petitioner then pled guilty to all three counts, and said that his pleas were freely and voluntarily entered. (Id.) The magistrate judge found that petitioner's guilty pleas were knowingly, voluntarily and intelligently made, and were not the results of any threats or promises except those in the Plea Agreement. (Id. at 31-32.)

### C.

Petitioner has failed to show clear and convincing evidence creating a real, substantial and legitimate doubt about his competence to plead guilty or be sentenced. Indeed, the evidence in the record clearly establishes that petitioner had the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and had a rational as well as factual understanding of the proceedings against him. The fact that petitioner had memory lapses due to prior heavy drug use, or did not remember selling drugs to the informant as part of his drug dealing, is insufficient to cast any doubt upon petitioner's

competence. Petitioner stated that despite the memory loss he clearly understood where he was, what he was doing, and the purpose of the proceeding. Petitioner expressed his angst over the sentencing uncertainty of the federal system as compared with the state system, but stated that he understood the differences. When directly asked by the magistrate judge, no one at the guilty plea colloquy thought there was an issue of competency. Petitioner had a clear memory that his discovery material indicated that the drugs in Count Three were weighed, and asked a reasonable question concerning why that was not set forth in the Indictment. Petitioner understood cooperation with the government, and vowed to provide important cooperation about several different areas. Petitioner clearly and succinctly summarized his drug dealing activities, and acknowledged that there was no doubt that five or more grams of cocaine base were involved in two of the counts. At the sentencing hearing, discussed in more detail below, no one suggested petitioner was incompetent or did not understand what was proceeding. (Cr. Doc. #42.) Petitioner's concern was simply the length of the sentence for "a few pieces of crack cocaine." (Cr. Doc. #42, p. 14.) The Presentence Report set forth no information which would suggest any competency issues.

Additionally, none of the information before the court raised a "bona fide doubt" as to the defendant's competency, and there was no reasonable cause to believe a defendant might be suffering from a mental disease or defect rendering him mentally incompetent to

the extent that he was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Quite the contrary was established by the entirety of the guilty plea colloquy, the Presentence Report, and the sentencing hearing.

Finally, it is clear from the record that petitioner's guilty plea was made knowingly, intelligently and with sufficient awareness of the relevant circumstances and likely consequences. The record establishes that the guilty plea was free from coercion; that petitioner understood the nature of the charges; and that petitioner knew and understood the consequences of his guilty plea. The magistrate judge carefully addressed these core concerns and the other issues raised during the plea colloquy. In light of the clear record of the plea colloquy, the Court concludes that petitioner's claims of an involuntary and unknowing guilty plea are without merit. A guilty plea is not rendered involuntary by a later change in law. <u>United States v. Cardenas</u>, 230 Fed. Appx. 933, 934-35 (11th Cir. 2007)(citing cases.)

Accordingly, the Court finds no merit in the first issue raised in petitioner's § 2255 motion.

**IV.**

Petitioner asserts that the district court's denial of a motion for continuance violated his Sixth Amendment right to have the effective assistance of counsel. Petitioner asserts that his attorney requested a continuance of the sentencing hearing so

-14-

counsel could better prepare herself for the sentencing, and the court erred in failing to grant the motion. Giving counsel more time to research the changing law would have resulted, petitioner asserts, in counsel aggressively advising him to withdraw from his Plea Agreement containing the broad waiver provision. (Doc. #2, pp. 4-6; #9, pp. 2-3.)

On August 31, 2004, defense counsel filed Defendant's Motion to Continue Sentencing (Cr. Doc. #29.) Defense counsel sought a continuance of the September 20, 2004, sentence until after the U.S. Supreme Court clarified whether Blakely v. Washington, 124 S. Ct. 2531 (2004) applied to the federal Sentencing Guidelines. The Court denied the motion (Cr. Doc. #32) on September 8, 2004, and defendant was sentenced on September 23, 2004. The U.S. Supreme Court decided United States v. Booker, 543 U.S. 220 (2005) on January 12, 2005.

Whether or not to grant a request for a continuance is a matter within the sound discretion of the court. United States v. Baker, 432 F.3d 1189, 1248 (11th Cir. 2005), cert. denied, 547 U.S. 1085 (2006). While petitioner phrases the issue in terms of counsel's ability to be prepared at sentencing, this was not the basis for the motion. Rather, defense counsel wanted a continuance until the law changed in her client's favor. Granting the motion would have been contrary to the directions of the Eleventh Circuit. On September 2, 2004, the Eleventh Circuit gave district courts the following instruction: "We hold that district courts should

continue to sentence pursuant to the Guidelines until such time as the Supreme Court rules on this issue [whether Blakely applies to the federal Sentencing Guidelines.]" United States v. Reese, 382 F.3d 1308, 1312 (11th Cir. 2004). Accordingly, there was no error, much less an abuse of discretion, when the Court denied petitioner's motion to continue the sentencing. Finally, allowing petitioner to withdraw his guilty plea would have been committed to the sound discretion of the court, United States v. Izquierdo, 448 F.3d 1269, 1276-77 (11th Cir. 2006), and petitioner had no valid basis to withdraw the guilty plea.

## V.

Petitioner asserts that his attorney provided ineffective assistance of counsel by not recognizing petitioner's mental defect, not having the court address the issue prior to his guilty plea, not objecting to the denial of the continuance at trial, and not raising it as an issue on direct appeal. Petitioner also asserts that counsel was not prepared for the sentencing hearing.

Issues of ineffective assistance of counsel can be raised in a § 2255 proceeding even where petitioner could have raised the issues on direct appeal but failed to do so. Massaro v. United States, 538 U.S. 500 (2003). The Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of

-16-

reasonableness" "under prevailing professional norms"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690). This judicial scrutiny is "highly deferential." Id. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90.

The same deficient performance and prejudice standards apply to appellate counsel. Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Roe v. Flores-Ortega, 528 U.S. at 476-77. If the Court finds there has been deficient performance, it must examine the merits of the claim omitted on appeal. If the omitted claim would have had a reasonable probability of success on appeal, then the deficient performance resulted in prejudice. Joiner v. United States, 103 F.3d 961, 963 (11th Cir. 1997). Nonmeritorious claims which are not raised on direct appeal do not constitute ineffective assistance of counsel. Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1144-45 (11th Cir. 2005).

There was no ineffective assistance of counsel in connection with petitioner's alleged mental defect and the failure to have the

-17-

court address the issue prior to petitioner's guilty plea. As discussed above, there was and is no reason to believe petitioner's condition was anywhere near incompetency. There was no reasonable basis for counsel to request a competency evaluation, and no prejudice resulting from the failure to do so.

Counsel was also not ineffective in failing to object to the denial of the continuance of the sentencing. There was no need to object after the motion was denied, but counsel did repeat the suggestion that a continuance would be appropriate at sentencing. (Cr. Doc. #42, p. 9.) There was also no ineffective assistance in failing to raise the denial of a continuance on direct appeal since the issue would have been meritless in light of Reese.

Finally, it is clear from the record that petitioner's attorney was prepared for the sentencing hearing. Defense counsel filed a written Motion for Downward Departure (Cr. Doc. #33) raising seven grounds for a downward departure. At the sentencing hearing counsel argued not only these grounds (Cr. Doc. #42, pp. 5-9), but that the Sentencing Guidelines were unconstitutional (Id. at 9.)

Accordingly, it is now

**ORDERED:**

1.  Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, and to Correct, Sentence By a Person in Federal Custody

(Doc. #1, Cr. Doc. #53) is **DENIED** as to all claims for the reasons set forth above.

    2.   The Clerk of the Court shall enter judgment accordingly and close the civil file.  The Clerk shall place of copy of the civil Judgment in the criminal file.

    **DONE AND ORDERED** at Fort Myers, Florida, this __10th__ day of June, 2008.

                                    JOHN E. STEELE
                                    United States District Judge

Copies:
AUSA (Casas)
Orental Allen